1  Joseph Darrell Palmer (SBN 125147)
   darrell.palmer@palmerlegalteam.com
2  Law Offices of Darrell Palmer PC
   2244 Faraday Avenue, Suite 121
3  Carlsbad, CA 92008
   Telephone: (858) 215-4064
4  Facsimile: (866) 583-8115

5  Attorneys for Objector Susan House

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11 SCHUYLER HOFFMAN, individually and )   Case No. 3:12-cv-539 JAH (DHB)
   on behalf of all others similarly situated, )
12                                           )   **OBJECTIONS OF SUSAN HOUSE TO**
                                             )   **PROPOSED SETTLEMENT AND**
13              Plaintiffs,                  )   **NOTICE OF INTENT TO APPEAR**
                                             )
14                                           )
   v.                                        )
15                                           )
                                             )   Date: September 22, 2014
16 BANK OF AMERICA, N.A.,                    )   Time: 2:30 P.M.
                                             )   Courtroom: 13b
17              Defendant.                   )   Hon. John A. Houston
                                             )
18 _____)

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

3    I.      INTRODUCTION ……………………………………………………… 1

4
        A. The Standard for Approving a Proposed Class Action Settlement ……. 1
5

6    II.     ARGUMENT AND OBJECTIONS ………………………………………… 3
        A. CIPA Violations Carry Significant Statutory Damages ……………… 3
7        B. Class Action Treatment is Not in the Best Interests of the Class ………. 5

8        C. The Notice is Inadequate …………………………………………… 10
        D. The Settlement Does Not Punish Bank of America for its Violations … 15
9        E. The Attorneys' Fees Requested have not been Earned ………………… 16

10

11   III.    JOINDER IN OTHER OBJECTIONS …………………………………… 18

12   IV.     CONCLUSIONS …………………………………………………………… 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Amchem Products, Inc. v. Windsor*

4
521 U.S. 591, 616 (1997) ………………………………………………  5, 9, 13

5

*Brown v. Wells Fargo & Co.*

6
No. 11-1362 (JRT/JJG), 2013 WL 6851068 (D. Minn. Dec. 30, 2013) …………  6

7

*Eisen v. Carlisle and Jacquelin*

8
417 U.S. 156, 176 (1974) ………………………………………………… 12, 13

9

*Fraser v. Asus Computer Int'l.*

10
No. C 12–00652 WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) …………  12

11

*Grant v. Bethlehem Steel Corp.*

12
823 F.2d 20, 23 (2d Cir. 1987) …………………………………………………  2

13

14
*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1022 (9th Cir. 1998) ……………………………………………  9

15

16
*Hecht v. United Collection Bureau*
691 F.3d 218, 225 (2d Cir. 2012) ………………………………………………  12

17

18
*In re Bluetooth Headset Products Liability Litig.*
654 F.3d 935 (9th Cir. 2011) ……………………………………………………  17

19

20
*In re Mercury Interactive Corp. Securities Litigation*
618 F.3d 988 (9th Cir. 2010) …………………………………………………… 13, 14

21

22
*In re Motor Fuel Temperature Sales Practices Litig.*
279 F.R.D. 598 (D. Kan. 2012) …………………………………………………  13

23

24
*In re Real Estate Title & Settlement Servs. Antitrust Litig.*
869 F.2d 760, 768 (3d Cir. 1989) ………………………………………………  13

25

26
*In re Trans Union Corp. Privacy Litig.*
211 F.R.D. 328, 350-351 (N.D. Ill. 2002) ……………………………………… 7

27

28

ii

*In re Warner Communications Sec. Litig*.
798 F.2d 35, 37 (2d Cir.1986) ……………………………………………  2

*Jonczyk v. First National Capital Corp*.
No. 13-cv-959-JLS 2014 WL 1689281 (C.D. Cal. Jan. 22, 2014) ………………  10

*Kight v. CashCall, Inc*.
200 Cal.App.4th 1377, 1396 (2011) ……………………………………  8

*Kline v. Coldwell, Banker & Co*.
508 F.2d 226 (9th Cir. 1974) ……………………………………………  6

*Knell v. FIA Card Services*
Case No. 12-cv-00426, SD Cal. ………………………………………… 4, 16

*Lane v. Facebook, Inc*.
696 F.3d 811, 819 (9th Cir. 2012) ………………………………………  3

*Larson v. AT&T Mobility LLC*
687 F.3d 109, 122-31 (3d Cir. 2012) ……………………………………  13

*Mandujano v. Basic Vegetable Products, Inc*.
541 F.2d 832, 835 (9th Cir. 1976) ……………………………………  12

*Mevorah v. Wells Fargo Home Mortg*.
*(In re Wells Fargo Home Mortg. Overtime Pay Litig*.
571 F.3d 953, 959 (9th Cir.2009) ………………………………………  9

*Mirfashi v. Fleet Mortgage Corp*.
356 F.3d 781, 785 (7th Cir. 2004) ……………………………………  2

*Mullane v. Central Hanover Bank & Trust Co*.
339 U.S. 306, 314 (1950) ………………………………………   11, 12, 13

*Officers for Justice v. Civil Svc. Comm'n. of the City and Cnty. of San Francisco*
688 F.2d 615, 625 (9th Cir. 1982) ………………………………………  3

*Parker v. Time Warner Entm't Co., L.P*.
331 F.3d 13, 22 (2d Cir. N.Y. 2003) …………………………………  7, 8

CASE NO. 12-cv-539 JAH
OBJECTIONS OF SUSAN HOUSE TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

*Silber v. Mahon*
957 F.2d 697, 701 (9th Cir. 1992) …………………………………………… 2

*Sonmore v. CheckRite Recovery Servs., Inc.*
206 F.R.D. 257, 265 (D. Minn. 2001) ………………………………… 5, 7

*Staton v. Boeing*
327 F.3d 938, 959 (9th Cir. 2012) ……………………………………… 3

*Torres v. Nutrisystem, Inc.*
289 F.R.D. 587, 590 (C.D. Cal. 2013) ……………………………… 8, 9

## STATUTES AND OTHER AUTHORITY

Federal Rules of Civil Procedure:
    23 …………………………………………… 11, 12, 15
    23(a)(2) …………………………………………… 8
    23(a)(3) …………………………………………… 8
    23(b)(3) …………………………………………… 5, 9
    23(b)(3)(A) …………………………………………… 5
    23(e)(1) …………………………………………… 2, 11
    23(e)(2) …………………………………………… 1
    23(h) …………………………………………… 13, 14
    54(d)(2) …………………………………………… 14
    2003 Adv. Comm. Notes …………………………………………… 14

California Penal Code:
    630 …………………………………………… 3
    630, et seq. …………………………………………… 3
    631 …………………………………………… 3
    632 …………………………………………… 3, 8
    632.7 …………………………………………… 3
    637.2(a) …………………………………………… 1, 3

Fundamental Principles for Class Action Governance
Alexandra Lahav, 37 IND. L. REV. 65, 118 (2003) ………………………… 15

iv

SUSAN HOUSE ("Objector") objects to the Proposed Class Action Settlement, gives notice of her counsel's intent to appear at the settlement hearing.  SUSAN HOUSE is a Class Member who has submitted a claim (Exhibit "A").

## I.   INTRODUCTION

Plaintiffs allege the Defendant recorded, monitored and eavesdropped on class members' telephone calls without obtaining consent, in violation of California's Invasion of Privacy Act. Plaintiffs also alleged causes of action for common law invasion of privacy, negligence, and unfair business practices.  As alleged, under Penal Code § 637.2(a) these violations establish statutory damages of $5,000 per violation or three times actual damages.  If the court approves the Settlement, the Defendant will deposit $2.6 million into a non-reversionary settlement fund.  Class Counsel's fees of $650,000 and costs of $25,000 will be paid out of the fund, and a $1,500 incentive payment will be made to the named Plaintiff.  The costs of providing notice to class members and administering the settlement (not disclosed in the Notice) will also be deducted from the Settlement Fund.  The remainder will be divided among class members who submit valid and timely claim forms.  According to Defendants', the total number of potential class members is approximately 1,484,181 persons.  Dkt. 48, page 3.

### A. The Standard for Approving a Proposed Class Action Settlement

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate

1

courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp*., 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp*. 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed Class Members.  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'"  *Grant, citing In re Warner Communications Sec. Litig*., 798 F.2d 35, 37 (2d Cir.1986).  *See also Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights.  Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

2

The burden to demonstrate the fairness of a settlement falls upon its proponents. *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2012); *see also Officers for Justice v. Civil Svc. Comm'n. of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). When settlement occurs before formal class certification, settlement approval requires a higher standard of fairness to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012).

## II.   ARGUMENT AND OBJECTIONS

### A. CIPA Violations Carry Significant Statutory Damages

The California's Invasion of Privacy Act, Penal Code § 630, et seq. was enacted in 1967 for "protect[ing] the right of privacy of the people of this state."  Penal Code § 630. The California Legislature declared that with new devices and technology used "for the purposes of eavesdropping upon private communications," the resulting invasion of privacy from the "use of such devices and techniques has created a serious threat to the free exercise of personal liabilities and cannot be tolerated in a free and civilized society."  *Id.*  Various sections of the CIPA make it illegal to wiretap (§631), to eavesdrop (monitor) and record telephonic communications (§632) or to record cell phone communications without consent (§632.7).  Violations of this statute carry significant damages.  CIPA violations establish statutory damages of $5,000 per violation or three times actual damages per violation.  Penal Code § 637.2(a).  The Complaint

3

further alleges that in aggregate, with a proposed class numbering in the tens of

thousands, projected damages exceed the $5,000,000 threshold for federal court

jurisdiction.  Complaint, ¶3.

The specific violations alleged are:

> ¶9. On or about February 2, 2012, Plaintiff had telephone communications with certain employees, officers and/or agents of Defendant that were initiated by said employees, offices and/or agents of Defendant. This conversation with Plaintiff was, without Plaintiff's knowledge or consent, recorded, monitored, and/or eavesdropped upon by Defendant, causing harm and damage to Plaintiff. Only at the end of the conversation, when Plaintiff inquired if the call was being monitored and/or recorded Defendant's agent, Nicole Dousey disclosed that the conversation was in fact being recorded. At no time during these calls did Plaintiff give his consent for the telephone calls to be monitored, recorded and/or eavesdropped upon.  Amended Complaint, Dkt. 18, ¶ 9.

Essentially, the Complaint provides information on one telephone call between

Schuyler Hoffman (the named Plaintiff) and Defendant.  Hoffman claims he did not learn

the conversation would be recorded until the end of the conversation.  One month later,

on March 2, 2012, Hoffman's attorneys filed this class action litigation for similarly

situated individuals, claiming damages in excess of $5 million for the class.  Amended

Complaint, ¶3.  The same attorneys filed another similar action at around the same time,

*Knell v. FIA Card Services* (USDC, California Southern District, Case No. 12-cv-00426,

Docket  Nos. 70-1 and 73-1), and much of the briefing in the two cases appear to be

nearly identical.

**B. Class Action Treatment is Not in the Best Interests of the Class**

A prerequisite for class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This Settlement provides a classic example of why class action treatment is not always the best way to resolve a controversy.

In considering whether class action treatment is appropriate, the interests of the class should be paramount.  Rule 23(b)(3)(A) invites a court to consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). In setting out Rule 23(b)(3)'s factors for a court to consider, it was "anticipated that in each case, courts would 'consider the interests of individual members of the class in controlling their own litigations.' " *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 616 (1997).  *Accord.  Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265 (D. Minn. 2001).

Statutory damages are available to individual class members for $5,000.  This Settlement will compromise individual claims for about $1.80 per person.  (Assuming a $2.6 million settlement fund to be divided among 1,484,181 potential claimants.)  Confronted with such underwhelming results, many courts have found that when a statute establishes significant per violation statutory damages, it is not in the best interests of class members to waive their claims for minimal individual compensation.

5

The Ninth Circuit has held that violations of statutes establishing punitive damages may not be appropriate for class action treatment.  In *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) the court rejected class certification, finding class action treatment was not superior where individual recoveries could have amounted to $1,875 and attorneys' fees and costs were recoverable under the statute.  This is another case in point, where individual class members could file individual actions to protect their right to privacy and receive $5,000 in damages under CIPA, but instead under this Settlement will receive only minimal damages.

More recently in *Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 WL 6851068 (D. Minn. Dec. 30, 2013), Judge John R. Tunheim of the U.S. District Court for the District of Minnesota denied class certification in a case alleging Wells Fargo violated the Electronic Funds Transfer Act (EFTA) by failing to provide conspicuous notice on an ATM that a fee would be charged. The court concluded a class action was not superior and that common questions did not predominate in part because the plaintiff's proposed class was difficult to identify. Of particular relevance here, the court also concluded that a class member's maximum recovery in a class action would be minimal as compared to an individual action.  Individuals bringing EFTA claims could recover between $100 and $1,000 dollars in statutory damages, while total recovery in a class action under the EFTA would be capped at $500,000. The court concluded that "individual ATM users would receive higher damages plus attorneys' fees if they brought

6

individual claims." This is certainly the case here, where CIPA provides for significant

statutory damages but the class are being asked to settle for an amount likely to be so low

it would not even be worth filling out the claim form.

In *Sonmore v. CheckRite Recovery Servs*., 206 F.R.D. 257, 265-66 (D. Minn. 2001)

the court reached a similar conclusion. In that case the court found that the discrepancy

between the $25 that class members would recover in a class action, versus the $1000 in

statutory damages they could recover individually, indicated a class action was not a

superior method for adjudication of claims.

Class Counsel acknowledge that many courts have found that violations of statutes

such as CIPA – which carry large statutory damages – are not appropriate for class

certification. They note:

> Courts also view awards of excessive aggregated statutory damages with
> skepticism and reduce such awards – even after a plaintiff has prevailed
> on the merits – based on Defendants' rights to due process. *See, e.g.,*
> *Parker v. Time Warner Entm't Co., L.P*., 331 F.3d 13, 22 (2d Cir. N.Y.
> 2003) ("[T]he potential for devastatingly large damages awards, out of all
> reasonable proportion to the actual harm suffered by members of the
> Plaintiffs class, may raise due process issues"); *In re Trans Union Corp.*
> *Privacy Litig*., 211 F.R.D. 328, 350-351 (N.D. Ill. 2002) (declining to
> certify a class where it "could result in statutory minimum damages of
> over $19 billion, which is grossly disproportionate to any actual
> damage"). Dkt. 52-1, page 15.

Although these cases reflect judicial concern that Defendants' might be subject to

cripplingly large judgments, the opposite result is found here. The small settlement fund

established underscores the limited benefit achieved for the class. Rather than the

7

devastating damages envisioned by the court in *Parker, supra*, Class Counsel have only achieved what might be considered a minor inconvenience for the Defendants.

Class Counsel also acknowledge that courts looking at cases filed under California's Invasion of Privacy statute have found class treatment is not appropriate. The case of *Torres v. Nutrisystem*, cited by Class Counsel at Dkt. 52-1, page 15, is relevant.

Torres alleged that Nutrisystem had recorded her and other customers' telephone calls without notice, in violation of CIPA. *Torres v. Nutrisystem, Inc*., 289 F.R.D. 587, 590 (C.D. Cal. 2013). The court determined that Torres failed to establish the commonality and typicality prerequisites to class certification required by Rule 23(a)(2) and(3). The court found there was no commonality because violations of Penal Code § 632, which prohibits non-consensual recording of confidential telephone communications, requires a parties' objectively reasonable expectation that the conversation is not being overheard or recorded. The court noted:

> "The issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on numerous specific factors, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures."

*Torres*, citing *Kight v. CashCall, Inc*., 200 Cal.App.4th 1377, 1396 (2011). Because of this, the court said determining whether each class member had an

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

expectation of confidentiality would require a detailed factual inquiry into the circumstances of each call. *Torres*, at 587-592.  The court also found that determining whether class members had consented to the recordings required an additional detailed factual inquiry, again because lack of consent is a required element. *Id.*, at 594.

The court found that the class did not meet the Rule 23(b)(3) predominance requirements.  The court said, "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The "main concern in the predominance inquiry ... [is] the balance between individual and common issues." *Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg. Overtime Pay Litig.)*, 571 F.3d 953, 959 (9th Cir.2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  However, the Court, found that the individual inquiries required to resolve the consent and confidentiality issues for each class member were predominant.  Because these individualized issues were central to claims filed under CIPA, class certification was not appropriate.  Id. 594-5.

The above precedent suggests that consumer privacy violations may not be appropriate for class certification.  When a statutory scheme is established to provide

9

individuals an opportunity to remedy grievances through individual actions, it seems

unfair to resolve such claims on a class wide basis.

The recent decision in *Jonczyk v. First National Capital Corp.*, No. 13-cv-959-JLS

2014 WL 1689281 (C.D. Cal. Jan. 22, 2014), raises another issue related to class

certification of CIPA claims.  First National and its employee were in California, but the

plaintiff contacted First National from her home in Missouri. The district court applied a

conflict-of-law analysis and concluded that the law of Missouri (a one-party consent

state) governed the telephone call, not California's CIPA. The court held that California

had little interest in a Missouri resident's claims, while Missouri had valid interests in

limiting the reach of its wiretapping statute.

CIPA is aimed at protecting consumer's privacy rights.  If any rights should be

private and not appropriate for class treatment, and waiver through lack of notice, it

should be privacy rights.  The issues are not appropriate for class treatment; it would be

unfair to Class Members to approve a settlement releasing all claims of 1,484,181

persons for such minimal consideration.

## C. The Notice is Inadequate

The notice plan approved by the court included the creation of a website to include

relevant documents, including the claim form and class notice, and publication in various

publications.   The Short Form Notice was required to be published in California-wide

publications: Bakersfield Californian, Record Searchlight, Times-Standard, Fresno Bee,

Los Angeles Times, Sacramento Bee, San Diego Union- Tribune, San Francisco Chronicle, Tribune, Mercury News, Sunset magazine, Better Homes & Gardens magazine, Parade magazine, USA Weekend magazine, and People magazine. Despite the expensive advertising campaign – which will come out of the Settlement Fund and reduce class members' recovery – the notice plan fails to satisfy the requirements of Rule 23 and the laws of this circuit.

The notice plan is also inadequate because it does not require direct notice to class members.  Rule 23(e)(1) requires "direct notice" of a proposed settlement be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

The notice plan is inadequate because it does not include direct notice for class members, all of whom are or were Bank of America's clients.  Disclosure through adequate notice has been the "most important principle for class action governance." Alexandra Lahav, Fundamental Principles for Class Action Governance, 37 IND. L. REV. 65, 118 (2003). While "direct notice to class members by mail, e-mail or other electronic individualized means [may be] impractical" for the entire class, it is obligatory for those class members for whom the defendant has contact information.  Despite this, the notice plan is by publication only.

Inadequate notice raises constitutional due process concerns.  Under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) settlement notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections."

*Mullane* also held, "[w]here the names and post-office addresses of those affected by a

proceeding are at hand, the reasons disappear for resort to means less likely than the

mails to apprise them of its pendency." Id. at 318. Likewise, in *Eisen v. Carlisle and*

*Jacquelin*, 417 U.S. 156, 176 (1974) the Supreme Court held that "individual notice to

identifiable class members is not a discretionary consideration to be waived in a

particular case….each class member who can be identified through reasonable effort

must be notified." There, the class numbered approximately 6 million, with only a

minority, 2.25 million, being identifiable to the defendant. *Id.* at 166-67.  The large size

of the class and the expense of the notice did not obviate the need for individual notice,

particularly since the defendant possessed the information necessary to provide individual

notice. Id. at 175-76.  Following these decisions, the Ninth Circuit held that "[t]o comply

with the spirit of [Rule 23 notice provisions], it is necessary that the notice be given in a

form and manner that does not systematically leave an identifiable group without notice."

*Mandujano v. Basic Vegetable Products, Inc*., 541 F.2d 832, 835 (9th Cir. 1976).  *See*

*also Fraser v. Asus Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142 (N.D.

Cal. Dec. 21, 2012) (concluding publication is not sufficient, even when postal notice

would only reach 30% of class,).  The fact that class members will only be entitled to

insignificant awards under this settlement in no way negates their right to direct notice.

*Hecht v. United Collection Bureau*, 691 F.3d 218, 225 (2d Cir. 2012) (repudiating

12

argument that "the negligible amount of money to be awarded per person under the…settlement justified lesser notice.")  "A cause of action for damages is a property right, and thus cannot be taken without due process." *In re Real Estate Title & Settlement Servs. Antitrust Litig*., 869 F.2d 760, 768 (3d Cir. 1989).  At the least when monetary claims are released as part of a class action, the stringent due process standards of *Mullane* and *Eisen* apply.  Where class members would be giving up their individual causes of action and their rights to significant statutory damages as part of the settlement, individual notice is necessary wherever possible.  Once it is established that the full rigors of due process notice apply, the publication only notice here is unacceptable.  *See, e.g., Larson v. AT&T Mobility LLC*, 687 F.3d 109, 122-31 (3d Cir. 2012) (reversing notice plan that did not require defendants to search through their record for providing individual notice). "Plaintiffs' pocketbooks are not a factor—the mandatory notice requirement may not be relaxed based on the high cost of providing notice." *In re Motor Fuel Temperature Sales Practices Litig*., 279 F.R.D. 598 (D. Kan. 2012) (*citing Amchem* and *Eisen*). For the settling parties, meager notice means less resistance, and less cost to settlement.  But for class members, it means an abridgment of statutory and constitutional rights.

The information provided on the settlement website is also inadequate, as it does not include the motions for attorneys' fees and final approval.  Interpreting Rule 23(h), the Ninth Circuit in *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(9th Cir. 2010) found that Rule 23(h) requires that attorney fee motions be filed prior to the deadline to object to the settlement.  Quoting Rule 23(h), the court noted that:

> "The plain text of the rule requires . . .
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>  (2) A class member, or a party from whom payment is sought, may object to the motion.
> Fed.R.Civ.P. 23(h). The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed."
> *Mercury*, at 993.

The Advisory Committee Notes to the 2003 amendments to Rule 23(h) also indicate that class members have a right to review the attorneys' fee motion prior to the deadline to object to a settlement.  The Notes elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion."  2003 Adv. Comm. Notes; *accord, Mercury Interactive*, at 994.

The notice is also inadequate because Class Counsel have neglected to provide much of the information needed for class members to evaluate this settlement.  They have not provided information as to the costs of this notice plan or anticipated settlement administration expenses.  Prior to the deadline to object to the settlement they should provide information on the number of claims submitted.  This information would provide class members some general indication of what they might to receive under the

14

settlement.  The approach adopted here – which requires class members give up their rights knowing nothing about what they will achieve through the Settlement – does not meet the reasonable notice requirements of Rule 23.

**D. The Settlement Does Not Punish Bank of America for its Violations.**

In Bank of America's size, and the degree to which the settlement would penalize the bank, should also be considered in evaluating the fairness of the settlement. According to a recent financial report, Bank of America was the largest mortgage loan servicer in the United States, servicing 13.4 million loans.  On its website, the parent company notes:

> Bank of America is one of the world's largest financial institutions, serving individual consumers, small- and middle-market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk management products and services. We serve approximately 52 million consumer and small business relationships with approximately 5,400 retail banking offices and approximately 16,300 ATMs and award-winning online banking with 30 million active users. Bank of America is among the world's leading wealth management companies and is a global leader in corporate and investment banking and trading across a broad range of asset classes, serving corporations, governments, institutions and individuals around the world.

For such a large company, a $2.6 million settlement is pocket change.  But that pocket change for the bank should not translate into pennies on the dollar for class members who have suffered invasions of their privacy while dealing with the bank.

///

### E. The Attorneys' Fees Requested have not been Earned

Class Counsel request fees of $650,000.  This amount represents 25% of the settlement fund.  The fees represent Class Counsel's lodestar times a multiplier of 1.75.  Collectively, Class Counsel's total lodestar is $369,905.00, based on 687.2 hours.  The Kazerouni Law Group claims 297.3 hours at a rate $545.00 per hour for a lodestar of $162,028.50, Hyde & Swigart claim to have spent 292.7 hours, also at a rate of $545, with a total Lodestar of $159,521.50, and Orshansky & Yeremian LLP claim to have spent 97.2 hours on the litigation, at rates ranging from $285 -$575, for a lodestar of $48,355.  The Motion for Attorneys' Fees claims costs of $9,343.33, although the Notice had suggested the attorneys would seek up to $25,000 in costs.

The attorneys claim to have spent a full year of litigation, including many months of written discovery, the production of voluminous documents, and discovery disputes.  The declarations by attorneys Abbas Kazerounian (Dkt. 52-2), Joshua Swigart (Dkt. 52-3), and Anthony J. Orshansky (Dkt. 52-3) explain the attorneys' experience in class action litigation, and some general information on the work performed, but provide little information to substantiate the number of hours devoted to this litigation.  The number of cases they claim to have litigated over the last few years suggests the hours may be inflated and may reflect double billing for work essentially copied from similar cases.  Motions filed *in Knell v. FIA Card Services* are eerily similar, as are the number of hours the attorneys claim to have spent litigating the two cases.  The cookie cutter nature of

16

much of the work performed by these firms is suggested by the large number of cases pursued by these firms.  Mr. Kazerouni claims his law firm has litigated over 2000 cases in the past seven years. (Dkt. 52-2, ¶5).  Mr. Swigart claims Hyde & Swigart has litigated over 1,200 cases in the past eleven years. (Dkt. 52-3)  The court should require detailed billing records to substantiate the hours claimed.

Although the benchmark for attorneys' fees in the Ninth Circuit is 25%, the poor result here argues against approval of these fees.  Class Counsel should not be awarded the requested fees because the settlement does not reach an equitable conclusion for the class.

The combination of limited compensation to class members despite significant compensation for class counsel also suggests the compensation requested by the attorneys is improper.  The court should be mindful of the fairness concerns the Ninth Circuit raised in *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011). In that case the court was troubled by "the disparity between the value of the class recovery and class counsel's compensation".  The court held that this disparity "raises at least an inference of unfairness" and further noted "the current record does not adequately dispel the possibility that class counsel bargained away a benefit to the class in exchange for their own interests."  *Id.* at 938.  The same concerns exist here, and suggest the court should exercise caution in approving this fee award.

17

Class Counsel represented one individual; that individual may be entitled to statutory damages of $5000.  Counsel should have pursued the case for that client, and taken their fees payable on that action.  By attempting to turn an individual wrong into a class settlement they create competing interests and short change their client and now the class.

Mr. Hoffman should not be awarded an incentive award nearly 1000 times greater than the average class member share.  Hoffman alleged a telephone call with defendant was recorded without his consent, he alleged no facts indicating a reasonable expectation that the call would not be recorded or damages; the facts he alleged were unique to his experience and did not merit class treatment.

## III.   JOINDER IN OTHER OBJECTIONS

These objectors join in all other well-founded and meritorious objections.

## IV.   CONCLUSIONS

For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.

/ / /

/ / /

/ / /

18

1
2
3
4

- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

5
6
7

LAW OFFICES OF DARRELL PALMER PC

8
9
10

Dated:   August 21, 2014              By: /s/ Joseph Darrell Palmer_____
                                          Joseph Darrell Palmer
                                          Attorney for Objector Susan House

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of California by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

I further certify that a true and correct copy of the foregoing was mailed via US Mail, postage prepaid, to the following:

**<u>The Claims Administrator</u>**
*Hoffman v. Bank of America*
c/o GCG
P.O. Box 35117
Seattle, WA 98124-5117

       ___/s/ Joseph Darrell Palmer_____
       Joseph Darrell Palmer

20