**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Matthew M. Loker, Esq. (SBN: 279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[ADDITIONAL COUNSEL FOR PLAINTIFF LISTED ON SIGNATURE PAGE]

Attorneys for Plaintiff,
*Schuyler Hoffman*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SCHUYLER HOFFMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**BANK OF AMERICA, N.A.,**<br><br>Defendant. | **Case No.:** 3:12-cv-539 JAH (DHB)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE:** September 22, 2014<br>**TIME:** 2:30 P.M.<br>**COURTROOM:** 13B<br><br>**HON. JOHN A. HOUSTON** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL BACKGROUND .................................................................... 2

A. PLAINTIFFS' ALLEGATIONS ........................................................................ 2

B. DISCOVERY. ................................................................................................ 2

C. MEDIATION AND SETTLEMENT NEGOTIATIONS ....................................... 2

D. PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION ................. 3

E. CLASS NOTICE DISSEMINATION ................................................................ 3

F. RESPONSE TO CLASS NOTICE ..................................................................... 4

III. FINAL APPROVAL IS WARRANTED ........................................................ 5

A. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS ............................ 5

B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ....................... 5

   1. The Strength of Plaintiffs' Case and the Risks, Expenses, Complexity and Likely Duration of Further Litigation ........................................... 7

      **a.** *Challenges to the claims on their merits* ................................... 7

      **b.** *The risk of maintaining class action status throughout trial* ..... 7

   2. The Amount Offered in Settlement ....................................................... 8

   3. The Extent of Discovery Completed ...................................................... 9

   4. The Experience and Views of Counsel ................................................. 9

   5. The Presence of a Governmental Participant ........................................ 9

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

6. <u>The Reaction of Class Member</u> ........................................................... 10

    **a.** *Certification of a Settlement Class is Appropriate* ................. 11

    **b.** *The Notice Plan Satisfies the Requirements of Due Process* ... 17

    **c.** *The Attorneys' Fees and Costs Are Justified* .......................... 22

    **d.** *The Incentive Award to Hoffman Is Reasonable* ..................... 23

7. <u>The Presence of Good Faith, Absence of Collusion, and the Approval of a Third-Party Mediator Support Final Approval of the Class Settlement</u> ......................................................................... 23

IV.    <u>CONCLUSION</u> ........................................................................ 24

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Adoma v. Univ. of Phoenix, Inc.,*
 2010 WL 4054109 (E.D. Cal. Oct. 15, 2013) ................................................ 24

*Arthur v. Sallie Mae,*
 No. C10-198 JLR (W.D. Wash. Sept. 14, 2012) ......................................... 11

*Astiana v. Kashi Co.,*
 291 F.R.D. 493 (S.D. Cal. 2013) ................................................................ 19

*Batmanghelich v. Sirius XM Radio, Inc.,*
 No. 2:09-cv-09190 VBF (JCx) (C.D. Cal. Jul. 22, 2011) ........................... 12

*Beck-Ellman v. Kaz USA, Inc.,*
 2013 WL 1748729 (S.D. Cal. January 7, 2013) ......................................... 18

*Bert v. AK Steel Corp.,*
 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........................................... 24

*Boyd v. Bechtel Corp.,*
 485 F. Supp. 610 (N.D. Cal. 1997) .............................................................. 9

*Brown v. Wells Fargo & Co.,*
 2013 WL 6851068 (D. Minn. Dec. 30, 2011) ............................................ 14

*Chavez v. Netflix, Inc.,*
 162 Cal. App. 4th 43 (2008) ........................................................................ 21

*Churchill Vill., LLC v. Gen. Elec. Co.,*
 361 F.3d 566 (9th Cir. 2004) ....................................................................... 10

*Class Plaintiffs v. City of Seattle,*
 955 F.2d 1268 (9th Cir. 1992) ....................................................................... 5

*Dennis v. Kellogg Co.,*
 No. 09-CV1786, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) .......... 11, 24

*Fulford v. Logitech, Inc.,*
 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. 2010) ......................................... 8

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Garner v. State Farm Mut, Inc.,*
   2010 WL 1687832 (N.D. Cal. 2010) ........................................................ 6

*Gallucci v. Boiron, Inc.,*
   2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) ........................................ 18

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 6, 14

*Herfert v. Crayola, LLC,*
   No. 2:11-cv-01301 JCC (W.D. Wash. Aug. 17, 2012) ............................ 11

*Horn v. Bank of America, N.A.,*
   No. 3:12-cv-01718 GPC-BLM (S.D. Cal. Apr. 14, 2014) ......................... 11

*Hunt v. Check Recovery Systems, Inc.,*
   2007 WL 2220972 (N.D. Cal. Aug. 01, 2007) ........................................ 18

*Ikonen v. Hartz Mountain Corp.,*
   122 F.R.D. 258, 261 (S.D. Cal. Sept. 20, 1988) .................................... 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ......................................................... 22, 24

*In re Cellphone Fee Termination Cases,*
   186 Cal. App. 4th 1380 (2010) ........................................................... 21

*In re Hydroxycut Marketing and Sales Practices Litigation,*
   2014 WL 815394 (S.D. Cal. Mar. 3, 2014) ............................................ 11

*In re Insurance Brokerage Antitrust Litigation,*
   2007 WL 542227 (D.N.J. Feb. 16, 2007) ............................................... 21

*In re Lorazepam & Clorazepate Antitrust Litigation,*
   205 F.R.D. 369 (D.D.C. 2002) .............................................................. 21

*In re Managed Care Litigation, Class Plaintiffs v. Aetna Inc.,*
   2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ........................................ 21

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*In re Mercury Interactive Corp. Security Litig.*,
618 F.3d 988 (9th Cir. 2010) ........................................................ 20

*In re Microsoft I-V Cases*,
135 Cal. App. 4th 706 (2006) ....................................................... 22

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 1036 (N.D. Cal. 2007) ........................................ 9, 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009) ................................................. 19

*In re Tableware Antitrust Litigation*,
484 F. Supp. 2d 1078 (N.D. Cal. April 12, 2007) ....................... 18

*Jonczyk v. First National Capital Corp.*,
2014 WL 1689281 (C.D. Cal. Jan. 22, 2014) .............................. 17

*Kline v. Coldwell Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ................................................. 15, 16

*Knell v. FIA Card Services, N.A.*,
No. 3:12-cv-AJB (WVG) (S.D. Cal. Aug. 15, 2014) ................... 14

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009) ............................................... 6

*Krzesniak v. Cendant Corp.*,
2007 WL 4468678 (N.D. Cal. Dec. 17, 2007)............................... 19

*Larson v. Sprint Nextel Corp.*,
2010 WL 239934 ......................................................................... 24

*Linney v. Cellular Alaska P'ship*,
1997 U.S. Dist. LEXIS 24300 (N.D. Cal. 1997) ........................... 9

*Milliron v. T-Mobile USA, Inc.*,
2009 WL 3345762 (D.N.J. Sept. 14, 2009) ................................. 24

*Morenco v. Visa, Inc.*,
No. 2:10-cv-08022 DMG (VBKx) (C.D. Cal. Oct. 24, 2010)...................... 13

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Moreno v. Autozone, Inc.*,
    251 F.R.D. 417 (N.D. Cal. 2008) ................................................................... 19

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................... 18, 20, 21

*Munoz v. Coca Cola Bottling Co. of Los Angeles*,
    186 Cal. App. 4th 399 (2010) ........................................................ 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523, 529 (C.D. Cal. 2004) ........................................... 10

*Offices for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .......................................................... 6

*Pelletz v. Weyerhaeuser Co.*,
    255 F.R.D. 537 (2009) ................................................................... 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 79 (1985)……………………………………………………21

*Ralston v. Mortgage Investors Group, Inc.*,
    No. 5:08-cv-00536 (N.D. Cal. Jan 24, 2008) ............................... 11

*Reed v. 1-800 Contacts, Inc.*,
    No. 12-cv-2359 JM (BGS) (S.D. Cal. Nov. 18, 2013) ................. 13

*Rodriguez v. West Publ'g Corp.*,
    No. 05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ...... 10

*Rose v. Bank of America Corporation*,
    No. 5:11-cv-02390 (N.D. Cal. May 16, 2011) .............................. 11

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    2010 WL 2486346 (C.D. Cal. 2010) ........................................... 24

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...................................................... 16

*Skuro v. BMW of North America, LLC*,
    No. 2:10-cv-08672 GW (FFM) (C.D. Cal. Aug. 27, 2012) ......... 13

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*,
    79 F.R.D. 571 (E.D. Pa. 1978) ...................................................... 10

*Sonmore v. CheckRite Recovery Servs.*,
    206 F.R.D. 257 (D. Minn. 2001) .................................................... 15

*Torres v. Nutrisystems*,
    289 F.R.D. 587 (C.D. Cal. Apr. 8, 2013) ...................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-MD-1827 SI, MDL No. 1827 (N.D. Cal. Oct. 15, 2012) ............ 10

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ...................................................... 7

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 2191901 (N.D. Cal. May 23, 2014) ................................ 19

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ......................................................... 21

**STATUTES AND RULES**

28 U.S.C. § 1715 ......................................................................................... 9

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 18

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ........................................................................................... 5, 6

Manual for Complex Litigation (4th ed. 2004) § 21.311 ......................... 18

2 McLaughlin on Class Actions § 6:7 (8th ed) ....................................... 24

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I.   __INTRODUCTION__

Plaintiff SCHUYLER HOFFMAN ("Plaintiff") submits this Memorandum in Support of Final Approval of the Parties' Class Action Settlement.  As discussed in Plaintiff's Motion for Preliminary Approval, the Parties' Settlement Agreement resolves all California Penal Code § 632 claims in this matter against Defendant BANK OF AMERICA, N.A. ("Defendant") that occurred between March 2, 2011 and February 13, 2014.  [*See* ECF No. 48, Order Certifying Provisional Settlement Class; Preliminarily Approving Class Action Settlement And Providing For Notice To The Settlement Class ("Preliminary Approval Order")].

Plaintiff brought this action on behalf of himself and all others similarly situated alleging that Defendant recorded Plaintiff and the putative class members without their knowledge and/or consent in violation of California Penal Code § 632.  [Plaintiff's First Amended Complaint, ECF No. 18 ("FAC")].  As described in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Defendant shall establish a settlement fund in the total amount of $2,600,000.00 to resolve the claims of the class.  [*See* ¶ 3 of the Parties' Settlement Agreement and Release, attached as Exhibit 4 to the Parties' Motion for Preliminary Approval].  Since 2012, the Parties have engaged in extensive discovery, depositions and motion practice.  As a result of this litigation, the Parties have fully established the applicable claims and defenses necessary to fairly, reasonably, and adequately evaluate the class claims that Plaintiff sought to represent.

With this Motion, Plaintiff now seeks final approval of the Parties' Class Action Settlement because no facts have arisen that would call into question the Class Action Settlement being fair, adequate and reasonable.  [ECF No. 48].  In fact, not a single class member has requested exclusion from the settlement, and there has been only one objection, which, for the reasons discussed herein, lacks merit.  As discussed in detail below, the proposed Settlement satisfies all criteria for settlement approval under Ninth Circuit authority.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## II.   PROCEDURAL BACKGROUND

The Parties were only able to reach this substantial settlement with the assistance the Honorable Edward A. Infante (Ret.) after approximately two years of litigation.  For the purpose of clarity, Plaintiff describes this litigation process below.

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff initiated this action on March 2, 2012.  [ECF No. 1; *see also* Kazerounian Decl., ¶ 4; Swigart Decl., ¶ 4; Orshansky Decl.,  ¶ 4].  Defendant answered the Complaint on May 7, 2012.  [ECF No. 9].  Following discussions between Counsel, Plaintiff lodged Plaintiff's First Amended Complaint ("FAC") on August 7, 2012, which substituted Bank of America, N.A. as the named defendant in place of defendant Bank of America Corporation.  [ECF No. 18]. Defendant answered the FAC on August 28, 2012.  [ECF No. 19].  The FAC alleged that Defendant violated California Penal Code § 632 by recording California consumers without the consumers' knowledge and/or consent.  [*Id.*] However, Defendant's Answer denied any liability for the violations alleged in Plaintiff's FAC and contended that various defenses shielded Defendant from liability. [ECF No. 19].

### B. DISCOVERY

The Parties vigorously litigated this matter during the discovery process. [Kazerounian Decl., ¶¶ 5-7; Swigart Decl., ¶ 5-7; Orshansky Decl., ¶¶ 5-7]. Plaintiff propounded numerous discovery requests including Requests for Admissions; Requests for Production of Documents; and, Special Interrogatories. [*Id.*].  In addition, Plaintiff was required to respond to Defendant's discovery requests as well as review Defendant's responses to Plaintiff's discovery requests. [*Id.*].  While reviewing all the information obtained in discovery, Plaintiff was required to review and analyze documents and information as well as research additional defenses proposed by Defendant in Defendant's discovery responses.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

[*Id.*].

## C. MEDIATION AND SETTLEMENT NEGOTIATIONS

Prior to attending formal mediation sessions with Judge Infante, the Parties engaged in informal settlement discussions to further establish and justify the Parties' respective positions.   [Kazerounian Decl., ¶ 7; Swigart Decl., ¶ 7; Orshansky Decl., ¶ 7].   Said discussions included examination of the legal landscape regarding unlawful recording class actions and the settlements reached in those cases.   [*Id.*].   In addition, the Parties also discussed the policies and procedures instituted by Defendant in order to avoid such violations.   [*Id.*].   During the full-day mediation, the Parties further discussed the applicable claims and defenses but ultimately reached a framework for the settlement terms on a class-wide basis.   [*Id.*]   Following mediation, the Parties continued negotiating in good faith and ultimately agreed on the preliminarily approved settlement.   [*Id.*]   Only after the Parties agreed on the material terms of the settlement did the Parties discuss payment of attorneys' fees, costs and Plaintiff's incentive award.   [*Id.*].

## D. PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION

On February 13, 2014, this Court preliminarily approved the Parties' settlement agreement.   [ECF No. 48].   Therein the following settlement class was provisionally certified:

> All persons who, on or after March 2, 2011, through the date of preliminary approval, received a mortgage servicing related call from Defendant while within the State of California that was recorded and/or monitored.

*See* Preliminary Approval Order, ¶ 3.

As required in the preliminary approval analysis, this Court preliminarily determined that the settlement did not result from fraud, overreaching, or collusion, but instead resulted from serious, informed, non-collusive negotiations.   [ECF No. 48].   Following Preliminary Approval of the settlement, the Parties' and the claims administrator, the Garden City Group, Inc. ("GCG"), have adequately performed

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

their obligations pursuant to the Settlement Agreement.  [Keough Decl., *passim*].

### E. CLASS NOTICE DISSEMINATION

The Parties administered the notice process through the claims administrator, GCG. [Preliminary Approval Order, ¶ 7].   In accordance with the Settlement Agreement and this Court's Preliminary Approval Order, GCG provided publication notice in 15 newspapers and magazines throughout California for a period of months which was the best notice practicable given the circumstances. [*Id.*; *see also* Keough Decl. ¶¶ 4-9].   The Class Notice provided detailed information regarding (a) class members' rights, including the manner in which objections and exclusions could be lodged; (b) the case's nature, history and progress; (c) the proposed settlement and reason for the settlement; (d) the settlement's benefits; (e) Class Counsel's requested fees and costs; (f) the Fairness Hearing's date, time and location; and, (g) Class Counsel's contact information. The estimated cost of notice, including the cost of publication, is $323,668.20. [Kazerounian Decl., ¶ 9c; Swigart Decl., ¶ 9c; and, Orshansky Decl., ¶ 9c].

### F. RESPONSE TO CLASS NOTICE

Pursuant to the Settlement Agreement, GCG established a website dedicated to the settlement where class members could find additional information and submit claim forms online.  [Keough Decl. ¶ 10].  GCG also dedicated a toll-free phone number to the settlement with an Interactive Voice Response ("IVR") system where class members could obtain information 24 hours a day, seven days a week and could also speak with live representatives.  [*Id.* at ¶ 11].  In response, a sizeable number of consumers — 369 — contacted GCG to discuss the Class Notice, their options, and the case status telephonically.   [*See* Supplemental Declaration of Jennifer M. Keough, ¶ 4].   Furthermore, the settlement website received a total of 1,081 visits.  [*Id.* at ¶ 3].

Out of all the class members that received notice, not one person has opted out of the settlement, and only one person has objected to the settlement, *out of a class*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*of 1,454,181.* [Kazerounian Decl., ¶¶ 17-19]. Thus, class members who have submitted timely and valid claims will receive $1,811.08 each. [Kazerounian Decl., ¶ 13]. Class Counsel arrived at this number by subtracting both notice costs[1] and Plaintiff's attorneys' fees and costs[2] from the $2,600,000.00 Settlement Fund. [*Id.*]. This is an excellent result.

## III.   FINAL APPROVAL IS WARRANTED

### A. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Federal Courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here – individual litigation – would require a massive expenditure of public and private resources and, given the relatively small value of the claims of the proposed individual class members, would be impractical. Thus the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

### B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Before granting final approval of a class action settlement, a reviewing court must first find the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A. In evaluating class settlements, courts generally refer to eight criteria, with differing degrees of emphasis: (1) the likelihood of success by Plaintiffs; (2)

---

[1] GCG informed Plaintiff that the total notice costs for this matter are $323,668.20. [Kazerounian Decl. ¶ 9c.

[2] For this calculation, Plaintiff used the amount requested of $650,000 in attorneys' fees and $9,343.33 in costs.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and, (8) the presence of good faith and the absence of collusion.  *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.43 "General Criteria for Settlement Approval" (3d ed. 1992). However, it should be noted that this list is

> not exhaustive, nor will each factor be relevant in every case...The relative degree of importance to be attached to any particular factor will depend upon, and be dictated by, the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. 2009); *Garner v. State Farm Mut. Ins.*, 2010 WL 1687832, at *13 (N.D. Cal. 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.").  This is because "[t]he extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *Knight*, 2009 WL 248367, at *4.

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash 2009) (same).  Here, the record before the Court demonstrates that the settlement agreement satisfies the Ninth Circuit's standard and that final approval is warranted.  Thus, the Parties request this Court grant the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Parties' Motion for Final Approval.

### 1. The Strength of Plaintiff's Case and the Risks, Expenses, Complexity and Likely Duration of Further Litigation.

Plaintiff continues to believe that Plaintiff's claims against Defendant have merit and that Plaintiff could make a compelling case if Plaintiff's claims were tried.  In that regard, should Plaintiff prevail, Defendant could face substantial statutory penalties.  Nevertheless, it is apparent that Plaintiff and the Class would face a number of challenges if the litigation were to continue.

#### a. *Challenges to the claims on their merits*

In the Parties' Preliminary Approval Motion, Defendant identified a number of potential issues with proceeding on the merits.  While Plaintiff disputes the validity of said assertions, Defendant asserts that Plaintiff, and the Class Members, had no reasonable expectation of privacy because Defendant warned class members that it records all telephone calls. [Preliminary Approval Motion at pp. 3, 15].  In addition, Defendant also asserts that each consumer is informed that Defendant records telephonic communications by an automated message.  [*Id*. at p. 3].  Thus, a consumer that continued speaking after receipt of the warning would have impliedly consented to said recording.  [*Id*.].  Based upon these contentions, Defendant denies any and all liability related to Plaintiff's Complaint and FAC. [*Id*.].  While Plaintiff believes that Plaintiff would overcome these issues, the risk to the class is substantial.  To reject this settlement and proceed with litigation would be highly detrimental to the class; thus, Plaintiff believes it is in the best interest of the class to accept this substantial monetary benefit and has acted accordingly by accepting said settlement.

#### b. *The risk of maintaining class action status throughout trial.*

The benefits of settlement and a plaintiff's chances of success are typically evaluated together.  *See, e.g. Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the Plaintiffs' case on the merits

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

balanced against the amount offered in the settlement.").  Through discovery and additional confirmatory discovery, Plaintiff believes that Plaintiff obtained sufficient information to establish that Plaintiff's class satisfies the requirements of Fed. R. Civ. P. 23; however, Defendant has focused on the issues addressed above to argue that Plaintiff and the Class Members face numerous risks in moving forward such that that class treatment of this matter is inappropriate.  Should this Court decline to certify Plaintiff's case as a class action, the Class Members will be forced to retain their own counsel and proceed on the basis of individual claims only.

In addition, there is a substantial risk of losing inherent in any jury trial.  Even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome.  *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010) ("[L]iability and damages issues – and the outcome of any appeals that would likely follow if the Class were successful at trial – present substantial risks and delays for Class Member recovery.").

Under the Settlement Agreement, the Class Members may avoid each of the risks described herein and receive substantial monetary benefits. "[T]his settlement . . . guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8.  Thus, Plaintiff contends that the substantial risk weighs in favor of granting final approval of this matter.

### 2.  The Amount Offered in Settlement

The Settlement requires Defendant to pay $2,600,000.00 into a settlement fund out of which eligible Class Members will receive a *pro rata* share of cash payments meaning no amount of this fund will revert back to Defendant.  Given the potential issues described above, this settlement represents an outstanding result for Class Members, particularly because the Penal Code damages are purely

statutory in that Class Members have not suffered any out-of-pocket losses or other economic harm.

As discussed above, Class Counsel estimate that each Class Member will receive $1,811.09.   [Kazerounian Decl., ¶ 13].   Class Counsel arrived at this number after deducting notice costs as well as Plaintiff's attorneys' fees and costs from the settlement fund.

### 3.  The Extent of Discovery Completed

The Settlement was reached only after Class Counsel's thorough investigation and analysis of the factual and legal issues involved.  As detailed above, Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in this Action, both prior to filing this Action and during discovery.  [Kazerounian Decl., ¶¶ 4-7; Swigart Decl., ¶¶ 4-7; Orshansky Decl., ¶¶ 4-7.]  In addition, Defendant also provided Plaintiff with informal discovery as well as responded to confirmatory discovery to confirm that the settlement was fair, reasonable and adequate.  [*Id.*].

### 4.  The Experience and Views of Counsel

Class Counsel are particularly experienced in litigating unlawful recording claims and have a keen understanding of the legal and factual issues involved in this case.   [Plaintiff's Motion for Fees, Dkt. No. 52-2, 52-3, and 52-4.]   Based upon this experience, Class Counsel fully endorse this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the settlement.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

agreement is fair.").

### 5. **The Presence of a Governmental Participant**

No governmental agency is directly involved in this lawsuit; however, Defendant has notified the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 of the proposed settlements.  [ECF No. 47].  To date, no governmental entity has raised objections or concerns about the Settlement.

### 6. **The Reaction of Class Members**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004*).  *See also id.* (3 objections out of 75,630 notices); *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving the district court's finding that this fairness factor weighed in favor of settlement when "only 45 of approximately 90,000 notified class members objected to the settlement"); *Rodriguez v. West Publ'g Corp.*, No. 05-3222, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (54 objections out of 376,000 class members); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978) (approving settlement where there were 8,000 opt outs out of 188,000).

The response by class members demonstrates widespread approval of the settlement.  Out of a class of 1,454,181 persons, there have been zero opt-outs and only one objector.  [Kazerounian Decl., ¶¶ 17-19].  A total of 892 class members submitted timely and valid claim form and will receive $1,811.08 each.  [*Id.* at ¶ 13.]  The absence of opt-outs and paucity of objectors shows that class members viewed the settlement as fair, reasonable, and adequate.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Here, the lone objection comes from professional objector counsel Joseph Palmer[3] through serial objector and purported class member Susan House ("Palmer/House").[4]   In fact, the two have partnered up before in objecting to other class action settlements involving Bank of America.[5]   However, as previously noted by this Court, Palmer has a long and documented history of filing meritless objections to class-action settlements, possibly for personal gain,[6] and his antics have been previously admonished.[7]   As such, Palmer has been disciplined by the California, Arizona, and Colorado State Bars, and in July 2014 the State Bar of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

[3] *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Objections of Leveta Chesser and Johnny Kessel to Proposed Settlement and Notice of Intent to Appear at Final Approval Hearing, Case No. 3:07-MD-1827 SI, MDL No. 1827 (N.D. Cal. Oct. 15, 2012), Dkt. No. 6991. *See also id.*, Indirect-Purchaser Plaintiffs' and Settling States' Joint Response to Objections to Combined Class, *Parens Patriae*, and Governmental Entity Settlements, Dkt. No. 5601, Appendix A, which is a summary of over 25 class action settlements in which Palmer has appeared on behalf of objectors, wherein the objections were raised, overruled by the court, and later withdrawn, abandoned or dismissed prior to or on appeal without any apparent benefit to the classes at issue, attached to Kazerounian Decl., Exh. 2.

[4] *See Ralston .v Mortgage Investors Group, Inc.,* No. 5:08-cv-00536 (N.D. Cal. Jan 24, 2008); *Rose v. Bank of America Corporation*, No. 5:11-cv-02390 (N.D. Cal. May 16, 2011), Dkt. No. 88.

[5] *See, e.g.*, *Horn v. Bank of America, N.A.*, No. 3:12-cv-01718 GPC-BLM (S.D. Cal. Apr. 14, 2014), Order Granting Final Approval of Class Action Settlement, Dkt. No. 79.

[6] *See In re Hydroxycut Marketing and Sales Practices Litigation*, 2014 WL 815394, at *1 (S.D. Cal. Mar. 3, 2014) (Moskowitz, J.) (describing how Palmer and his colleague Christopher Bandas threatened to "tie up the settlement for two to three years during the appeals process" and suggested that the settling parties "pay him close to $400,000 to make the objections go away.")

[7] *See, e.g.*, *Alyson Herfert v. Crayola, LLC*, No. 2:11-cv-01301 JCC (W.D. Wash. Aug. 17, 2012), Order Denying Application to Appear Pro Hac Vice of Claimant's Counsel Darrell Palmer. Dkt. 74 ("Mr. Palmer falsely declared under penalty of perjury that he had not been disbarred or formally censured by a court of record or a state bar association."); Tr. of Hr'g in *Arthur v. Sallie Mae*, No. C10-198 JLR (W.D. Wash. Sept 14, 2012), p. 10, lnn. 3-21 (revoking Palmer's pro hac vice application and noting that he "has apparently submitted false pro hac vice applications in at least three other cases."), attached to Kazerounian Decl., Exh. 3; *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *4 n.2 (S.D. Cal. 2013) (Lorenz, J.) ("Mr. Palmer has been widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector [citations].")

California recommended that Palmer be suspended from the practice of law.[8]

### a. *Certification of a Settlement Class Is Appropriate.*

Palmer/Houston first object that this case is inappropriate for class treatment because they contend the settlement consideration to class members is inadequate when compared with the statutory damages provided under the CIPA.  [Obj. 5:19-21].

Very much to the contrary, the settlement consideration is adequate to compensate all class members who were likely to have standing to pursue a claim under the CIPA.  Although notice was directed to a class of 1,454,181 persons, not every one of these persons was recorded without an appropriate disclosure, and therefore not every one of these persons could have submitted a valid claim.  Only class members who were recorded *without the appropriate disclosure notifying them that the conversation was being monitored or recorded* could submit valid claims.  If a disclosure was given in compliance with Defendant's policy, no CIPA violation would have occurred.  For this reason, class members submitting claims were specifically required to state the "[a]pproximate [d]ate on or after March 2, 2011, through February 13, 2014, on which [the class member] received a mortgage servicing related telephone call from [Defendant] while within the State of California, *during which you did not receive a warning that the call would be monitored and/or recorded*[.]"  [Keough Decl., Exh. G].

As previously discussed, not all outbound calls were recorded, nor were all calls recorded by Defendant without the proper disclosure.  In fact, Defendant's Rule 30(b)(6) witness testified during his deposition that throughout the class period call-center employees were trained to give pre-conversation disclosures at the outset of all outbound calls.  [Hanstad Depo. Transcript, filed in support of preliminary approval, Dkt. No. 45-6, 15:21-16:17; 17:15-18:6].  Defendant

---

[8] Decision by State Bar Court of California recommending the suspension of Palmer, available at http://members.calbar.ca.gov/courtDocs/12-O-16924-2.pdf (last accessed August 23, 2014).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

purportedly also had an auditing process through which supervisors verified that call-center employees were making the appropriate pre-conversation disclosure. [*Id.* at 19:20-21:13.]  The auditing process involved two levels of review wherein Defendant's employees received coaching and, if issues persisted, said employees were disciplined up to and including termination.  [*Id.* at 21:11-23:14.]  Under these circumstances, Defendant argued that any omission of a pre-conversation disclosure was simply the result of human error.  [*Id.*].

Consequently, the number of persons entitled to submit legitimate claims under the settlement was far smaller than the total pool of customers who were recorded.  This was no secret and Plaintiff specifically advised the Court of Defendant's policies and practices at the time of preliminary approval, noting "there may be few settlement class members whose calls were actually recorded and/or monitored without the required call recording/monitoring disclosure, and consequently a low claims rate..." was expected.  [Dkt. No. 45-1, p. 21, fn. 9].

Therefore, Palmer/Houston's computation of the per-class member recovery under the settlement of $1.80 is incorrect and misleading.  [Obj. 5:19-23].  Because the alleged CIPA violations likely resulted from human error, the total pool of potential claimants is far smaller than 1,454,181, and perhaps accurately reflected by the number of valid claims submitted herein.  In this light, a settlement award of $1,811.09 per claimant represents meaningful recovery for the contested claims advanced in this litigation and is not, as Palmer/Houston contend, "so low [that] it would not even be worth filling out the claim form."  [Obj. 7:2-4].

Although Palmer/House object that $2,600,000.00 is "pocket change" for Bank of America which fails to "punish" the company for the alleged violations, *Id.* at 15:5-23, the amount is adequate given the extent of liability and meaningfully advances the objectives of this litigation, namely, to compensate claimants for the violation of their privacy rights.  As such, the settlement award of $1,811.09 per claimant is by no means paltry and compares favorably to other call-

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

recording settlements, all of which were granted final court approval.  *See*, *e.g.*, *Morenco v. Visa, Inc.*, No. 2:10-cv-08022 DMG (VBKx) (C.D. Cal. Oct. 24, 2010), Dkt. No. 45 (approximately $1,500 per claimant); *Batmanghelich v. Sirius XM Radio, Inc.*, No. 2:09-cv-09190 VBF (JCx) (C.D. Cal. Jul. 22, 2011), Dkt. No. 22 (approximately $734 for California claimants); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-2359 JM (BGS) (S.D. Cal. Nov. 18, 2013), Dkt. No. 49-1 (approximately $524 per claimant); *Skuro v. BMW of North America, LLC*, No. 2:10-cv-08672 GW (FFM) (C.D. Cal. Aug. 27, 2012), Dkt. No. 54 (approving settlement where claimants received $50 or service benefits); *Knell v. FIA Card Services, N.A.*, No. 3:12-cv-AJB (WVG) (S.D. Cal. Aug. 15, 2014), Dkt. No. 77 ($1,346.45 per claimant).

Contrary to Palmer/House, such actions are ideally suited for class action treatment because of the relatively small potential recovery for individual class members of $5,000.  Here, the superiority requirement, which involves a "comparative evaluation of alternative mechanisms of dispute resolution,"[9] provides adequate grounds to approve this strong class settlement.  Of course, the alternative method of resolution is individual claims for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the costs of litigation dwarf potential recovery.  *Id.*  Moreover, since the CIPA does not contain a fee-shifting provision, it would be difficult for class members to find an attorney willing to take their case on a contingency basis, and hourly representation would be uneconomical given the potential defenses to liability.[10]

Class treatment is also superior because the alleged violations by definition occurred surreptitiously.  If a class were not certified, many if not all class

---

[9] *Hanlon*, 150 F.3d at 1023.

[10] Attorneys' fees are potentially recoverable in CIPA cases under the general private attorney general statute, Cal. Civ. Code 1021.5, but only where "a significant benefit … has been conferred on the general public or a large class of persons," which may not be the case in individual CIPA actions.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

members would not bring claims for the violations alleged because the class members would never know that if their calls were actually recorded. The settlement gave class members the option of excluding themselves from the settlement and pursuing their individual claims if they wished, but none have done so. As a result, class treatment is a superior method for adjudicating these claims.

Further, Palmer/Houston cite to various cases in support of the position that the settlement class here should not be certified; however, not one of these cases involved violation of the CIPA. For example, *Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 WL 6851068, a Minnesota action, where the court denied certification of a putative class under the Electronic Funds Transfer Act (EFTA) is relied upon by Palmer/House. In *Brown*, the maximum individual recovery negotiated by counsel was merely $55 due to a $500,000.00 limit on EFTA class actions. *Id.* at *6. Unlike EFTA, CIPA does not restrict recovery in class actions, and in fact, this action settled for an amount far in excess of *Brown*. Similarly, Class Counsel is unaware of any CIPA case where the court denied final settlement approval.

Likewise, in *Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257 (D. Minn. 2001), another Minnesota case, the court denied a motion for class certification because the statute at issue there, the Fair Debt Collection Practices Act (FDCPA), also limited class recovery to $500,000.00, and given the number of putative class members in that case the maximum award each class member stood to receive would not have been greater than $25. *Id.* at 265. Thus, like *Brown*, *Sonmore* bears no relation to this action and should not be considered in ruling upon Plaintiff's Final Approval Motion.

Also inapposite is *Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974), which involved antitrust violations brought by sellers of real property against a putative defendant class of real estate brokers to fix brokerage commissions. *Id.* at 228. In denying certification, the court found that superiority

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

did not exist because, as a result of the class-action mechanism, each defendant would be jointly and severally liable for the total estimated recovery of $750 million regardless of his own liability, a result that was inconsistent with the Sherman Act's punitive purpose "to impose punishment upon the violator … for his own malefactions[,] not to subject him to vicarious liability by the coincidence of a class action for the staggering damages of this multitude." *Id* at 235.   The court also noted that the damages owed to individual sellers varied widely based on property sold and may in some circumstances have been well in excess of the average estimated recovery of $1,875.00.  *Id.* at 232-233.  The court also noted that individual prosecution was more likely because attorneys' fees and costs are recoverable under the Sherman Act.  *Id.* at fn. 5.

Here, none of these considerations are pertinent because there is only one defendant, there is no issue of joint and several liability, and CIPA strictly provides for statutory damages of $5,000.  Moreover, as noted above, CIPA expressly does not provide for the recovery of attorneys' fees and costs, a factor likely to impede unnamed class members from brining their own individual actions.

Moreover, *Kline* simply does not stand for the broad proposition that class actions are inappropriate for violations of statutes establishing punitive damages, [*see* Obj. 6:1-2] and indeed the law is to the contrary.  *See*, *e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) ("But where the statutory objectives include enforcement, deterrence or disgorgement, the class action may be the 'superior' and only viable method to achieve those objectives[.]").

Next, Palmer/House also erroneously cite to *Torres v. Nutrisystems*, 289 F.R.D. 587, 590 (C.D. Cal. Apr. 8, 2013) for the proposition that CIPA actions are uncertifiable.  However, Plaintiff previously cited to this case to demonstrate that the instant settlement is appropriate in light of the risks of further litigation, including risks at certification.  [Dkt. No. 52-1, p. 15.]  In addition, a mere cursory

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

review of *Torres* establishes that this matter does not stand for the proposition that CIPA actions are not certifiable as deceptively suggested by Palmer/House. Indeed, *Torres* is distinguishable from the instant action because, *inter alia*, this action involves outbound calls only unlike *Torres* where solely inbound calls were at issue.  As a result, class members did not receive an automated disclosure like the one used in *Torres*.  Moreover, the conversations in this action involved a live call-center employee speaking to class members directly and, given the nature of the calls at issue, Plaintiff submits that someone receiving such a call has a reasonable expectation that the call is not being recorded absent a disclosure to the contrary.

Finally, and completely inapposite, is *Jonczyk v. First National Capital Corp.*, 2014 WL 1689281 (C.D. Cal. Jan. 22, 2014).  Undoubtedly, *Jonczyk* is irrelevant since *Jonczyk* is based upon the factually irreconcilable situation of telephone communications between a California company and a Missouri resident located in Missouri while this action strictly seeks to remedy the rights of California consumers located in California based upon Defendant's violation of California law.  *Id.* at *1.  Therefore, no conflict-of-law analysis applies, and CIPA applies equally to all class members, including Plaintiff.

### b.  *The Notice Plan Satisfies the Requirements of Due Process.*

Palmer/House next object to the manner and content of the notice provided to the class.  [Obj. 10:22-15:4].  In so doing, Palmer/House ignore that this Court previously approved the notice and the notice plan when it preliminarily approved the settlement.  [Dkt. No. 48, ¶ 7].  As fully explained in Plaintiff's Preliminary Approval Motion, notice by publication was the only reasonable method of informing class members of this action.  [*See* Dkt. No. 45-1, 18:17-21:13].  As an initial matter, Defendant maintained the applicable recordings for only 60 days. [*Id.* at 13:23-14:1.]  Of course, without these recordings, it is impossible to ascertain who was recorded and who was not and, of those who were recorded,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

who received the disclosure and who did not.  [*Id.* at 14:1-2.  *See also* Hanstad Depo. Tr., 14:10-15:17.]   Moreover, and contrary to Palmer/House's baseless supposition [*see* Obj. 11:14-17] class members are not exclusively Bank of America's *current* clients.   In fact, Class membership is partly comprised of Defendant's *former* customers who had defaulted on their mortgages and no longer live at the same addresses.   In addition, some potential class members, like Plaintiff, included third parties for whom Defendant does not maintain contact information.  [Hanstad Depo. Tr., 14:22-15:14].   Thus, direct mail to these class members would have been ineffective in many cases and impossible in other situations.

Under such circumstances notice by publication is sufficient.   Plaintiff cited numerous cases for this proposition in his preliminary approval brief,[11] but

---

[11] *See Gallucci v. Boiron, Inc.*, 2012 WL 5359485, *7 (S.D. Cal. October 31, 2012) (finding that notice by publication was "reasonable and appropriate" and "fully satisfied all notice requirements under the law" given that defendant "does not collect or maintain information sufficient to identify Class Members."); *Beck-Ellman v. Kaz USA, Inc.*, Slip Copy, 2013 WL 1748729, *8 (S.D. Cal. January 07, 2013) (order preliminarily approving settlement, noting that publication notice and settlement website are "adequate and sufficient to inform the class members of their rights", even though the parties had also proposed notice by mail in case the court required such notice); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012 WL 253298, *3 (N.D. Cal. January 26, 2012) (denying defendant's motion to decertify class, rejecting defendant's argument that notice to class members would be impossible since notice by publication would be sufficient to alert consumers who own LCD products that they might be members of the proposed classes); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 261 (S.D. Cal. September 20, 1988) (noting "the Supreme Court does not require actual notice for all members of a class in every class action. With so many potential class members here, other forms of notice, such as notice by mail, publication, and radio and television broadcast, could be the 'best practicable' under the circumstances."); *Hunt v. Check Recovery Systems, Inc.*, 2007 WL 2220972, *3 (N.D. Cal. August 01, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts.") (emphasis added); *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. April 12, 2007) (granting plaintiffs' motion for provisional certification of settlement class and approving notice by publication only given that no list existed of the class members: "Because defendants do not have a list of potential class members, Doc. # 301, ¶ 2, the court agrees with plaintiffs that *notice by publication is the only reasonable method* of informing class members of the pending class action and the Lenox settlement.") (citing Fed. R. Civ. P. 23(c)(2)(B); Manual for Complex Litigation (4th ed.2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort.") (emphasis added).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Palmer/House make no mention of this authority anywhere in their six-page discussion about class notice generally. Instead Palmer/House cite to other wholly inapposite authority that presupposes the existence of records identifying class members and their actual addresses. *See*, *e.g.*, Obj. 12:2-4 (noting that notice via mail is necessary where the "names and post-office addresses of those affected by the proceeding are at hand") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950)). Here such information is unavailable; hence the need for publication notice that has been supplemented by internet notice. [*See id.* at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not *reasonably possible or practicable* to give more adequate warning.") (emphasis added)].

Consistent with authority in this Circuit, the notice defines the class based on objective criteria, which allows class members to identify themselves. *See*, *e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *10 (N.D. Cal. May 23, 2014) ("[I]t is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (same); *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal. 2009) (finding class definition sufficient where "class members will easily be able to identify themselves").

Further, "courts have found the use of a website beneficial as part of a class action notice" and "provide[s] an effective way to make substantial information available to class members." *Krzesniak v. Cendant Corp.*, No. 05-05156, 2007 WL 4468678, at *2 (N.D. Cal. Dec. 17, 2007). Indeed, "[a] referral to a website is included in the Federal Judicial Council's [sic] model class notice, and is not improper." *Adoma v. Univ. of Phoenix, Inc.*, No. S-10-0059, 2010 WL 4054109, at *3 (E.D. Cal. Oct. 15, 2010).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

As discussed above, the notice plan implemented here was extensive. It include publication of the short-form notice in 15 newspapers, including the *Bakersfield Californian*, *Redding Record Searchlight*, *Eureka Times-Standard*, *Fresno Bee*, *Los Angeles Times*, *Sacramento Bee*, *San Diego Union Tribune*, *San Francisco Chronicle*, *Oakland Tribune*, and *San Jose Mercury News*, and periodicals, including *People*, *Parade*, *Better Homes and Gardens*, *USA Weekend*, and *Sunset*. [*See* Keough Decl. ¶¶ 4-9.] The circulation of just one of these periodicals, *People* magazine, is 3.5 million persons, and owing to a high pass-along rate readership exceeds 41 million persons. [*Id.* at ¶ 5]. Moreover, the administrator established a settlement website, http://www.mortgagecallrecordingclass.com, and set up a toll-free hotline dedicated to this case. [*See* Keough Decl. ¶¶ 10, 11]. In response to this extensive notice campaign, a significant number of consumers contacted GCG to inquire as to the particulars of this class action settlement. In sum, the manner by which notice was given satisfied the requirements of due process.

Palmer/House also object to the content of the notice. First, they complain because the settlement website does not post Plaintiff's motion for fees and costs. [Obj. 13:25-14:19]. Consistent with *In re Mercury Interactive Corp. Security Litig.*, 618 F.3d 988 (9th Cir. 2010), this Court ordered the filing of Plaintiff's motion for fees and costs no later than 30 days prior to the last date for objecting to the settlement. [Preliminary Approval Order, Dkt. No. 48, ¶ 9]. Plaintiff complied with this requirement and provided sufficient information to permit each class member to make an informed decision. [*See* Dkt. No. 52.] Thus, Palmer/House undoubtedly knew that Plaintiff's motion for fees and costs had been filed because they refer to it at length in their objection. [*See* Obj. 16:1-18:14.] So neither they, nor any other class member, have suffered any prejudice.

Next, Palmer/House object because notice does not include information from which class members could estimate their recovery under the settlement, including

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the costs of notice and settlement administration and the number of claimants.  As an initial matter, Plaintiff's brief in support of preliminary approval did in fact estimate the cost of the notice and claims administration, *see* Dkt. No. 45-1, 5:22-23, but this estimate was necessarily inexact because of variation in the cost of publication, which would not be known until the notice plan was implemented. Nor could Plaintiff provide the class with notice of the number of claims submitted prior to the objection deadline because the claims deadline and objection deadline were on the same day, i.e., August 21, 2014.

More to the point, due process does not require the inclusion of this information in the notice.  The due process guaranteed to persons not before the court consists of notifying them of the pendency of the action and affording them the opportunity to opt out or object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).  Where these conditions are met, due process has been satisfied. *Id. Accord*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251-52 (2001); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 48-49, 56 (2008).

Palmer/House contend that the administration and notice costs and the number of claimants was needed to estimate recovery, but they provide no authority for this proposition, and indeed the law is to the contrary.  In *Munoz v. Coca Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399 (2010), the settlement created a non-reversionary common fund. *Id.* at 403.  The objector complained that "the notice to class members did not provide sufficient information to allow members to calculate how much they could expect to receive for their claims." *Id.* at 404. Additionally, the objector argued that the notice could have at least provided the minimum amount each class member would receive under the settlement. *Id.* at 412.  However, the court overruled the objection as lacking authority, noting that because the settlement created a non-reversionary common fund, the amount of

each class member's claim could not be known in advance.  *Id.*[12]

This ruling is applicable here since the settlement creates a non-reversionary common fund rendering it impossible to determine how much each claimant would receive prior to the applicable cut-off date.  However, class members desiring additional information were not without recourse.  The publication notice provided class members with the settlement administrator's contact information as well as the URL for the settlement website, where Class Counsel's contact information is posted.  *Cf. In re Microsoft I-V Cases*, 135 Cal. App .4th 706, 721, fn.13 (2006) (finding notice to be adequate where, *inter alia*, the claims administrator maintained a toll-free hotline where class members could obtain answers to questions).  If class members wanted additional information about the settlement, there were multiple ways of obtaining it.  As noted, many class members did contact the settlement administrator and Class Counsel during the claims process for additional information.  Palmer or House, however, did not do so.  [*See* Kazerounian Decl. ¶ 20; Swigart Decl. ¶ 14; Orshansky Decl. ¶ 14].  Instead, they were intent on filing their objection on whatever grounds they could manufacture. The Court should not countenance their patent gamesmanship.

### c. *The Attorneys' Fees and Costs Are Justified.*

Palmer/House's objection to Class Counsel's request for attorneys' fees is predicated upon the presumed inadequacy of the settlement amount and can be dispatched with reference to the foregoing discussion.  [*See* Obj. 17:8-9].  As before, Palmer/House rely upon authority unrelated to this matter.  Unlike counsel

---

[12] *See also In re Cellphone Fee Termination Cases* (2010) 186 Cal.App.4th 1380, 1392 (declining to require additional notice contents such as the class size from which class members could determine expected portion of the common fund) (citing authorities); *In re Lorazepam & Clorazepate Antitrust Litigation* (D.D.C. 2002) 205 F.R.D. 369, 379 ("[T]here is no requirement that the class size be specified in the notice[.]"); *In re Insurance Brokerage Antitrust Litigation*, 2007 WL 542227 (D.N.J. Feb. 16, 2007) (rejecting objection to notice that it "do[es] not provide details about the size of the class and the actual individual settlement values"); *In re Managed Care Litigation, Class Plaintiffs v. Aetna Inc.*, 2003 WL 22850070, (S.D. Fla., Oct. 24, 2003) (rejecting objection to notice that there was "no way to calculate the actual value of the settlement as to each class member since no estimate of size of class was provided[.]").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

in *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 938 (9th Cir. 2011), cited by Palmer/House, *see* Obj. 17:14-25, where the settlement provided $100,000 to cy pres and nothing to class members, Class Counsel here have achieved an excellent benefit for the class in the face of adverse authority and stiff legal competition.  Despite these challenges, Class Counsel obtained constructed a settlement from which class members could easily obtain a cash payment. Consequently, an award of attorneys' fees equaling 25 percent of the common fund is well earned and justified by the favorable result.

Furthermore, the Court should reject Palmer/House's baseless suggestion that Class Counsel double billed for this case merely because they have active dockets. [*See* Obj. 16:22-17:7.]  As fully detailed in the declarations filed in support of Plaintiff's motion for fees and costs, *see* Dkt. No. 52, Class Counsel are dedicated to consumer advocacy litigation and are held in high esteem within the legal community; their firms have the adequate staff and resources to carry heavy caseloads without resort to double billing.  Here, the time spent on this case consists of only 687.2 hours, which is consistent with the work required to investigate, file, prosecute, negotiate, and settle this action, all of which is detailed in the attorney declarations filed in support of Class Counsel's motion for fees. [Dkt. No. 52-1.]  Although Class Counsel regularly practice in the area of consumer privacy and have litigated and settled other call-recording cases, the facts of each case are different, the law continues to change, and class litigation cannot be prosecuted pro forma but requires a substantial investment of attorney time.  Class Counsel should be rewarded, not punished, for achieving a favorable result in a timely fashion.  Therefore the Court should overrule Palmer/House's objection to Class Counsel's fee request.

### d.   *The Incentive Award to Hoffman Is Reasonable.*

Palmer/House's last objection is to the incentive award requested by Hoffman, which they characterize as being 1000 times greater than the per-claimant

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

recovery.    [Obj. 18:8-9.]    Again, because claimants will receive $1,875, the incentive payment is actually less than the per-claimant recovery and in fact is less than Hoffman would have received had he successfully prosecuted an individual action.    This incentive award is modest in light of the time Hoffman has spent assisting in the prosecution of this case, the cost associated with lending his name to the action, and the incentive awards typically awarded to named plaintiffs in class cases.    [*See* Plaintiff's motion for fees, Dkt. No. 52-1, 19:25-21:28]. Therefore, the Court should overrule Palmer/House's objection and approve Plaintiff's incentive award.

### 7.   The Presence of Good Faith, Absence of Collusion, and the Approval of a Third-Party Mediator Support Final Approval of the Settlement.

In addition to considering the above factors, the Ninth Circuit has indicated that the Court should carefully review the settlement for any signs of collusion or conflicts of interest.    *See In re Bluetooth Headset Prods.  Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 McLaughlin on Class Actions § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, No. 09-CV1786, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

(the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive (emphasis added).").

As detailed above, the Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class action cases.  In addition, the Honorable Edward A. Infante (Ret.) of JAMS facilitated the final settlement of this action. [Kazerounian Decl., ¶ 7; Swigart Decl., ¶ 7; Orshansky Decl., ¶ 7].  Accordingly, no signs of collusion or conflicts of interest are present here.

## IV.   **CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request this Court enter an Order granting final approval of the Settlement.


Dated: August 25, 2014                    Respectfully submitted,


                                        **KAZEROUNI LAW GROUP, APC**


                                        By: ___/s/ Abbas Kazerounian___
                                           ABBAS KAZEROUNIAN, ESQ.
                                ATTORNEY FOR PLAINTIFF, SCHUYLER HOFFMAN


**[ADDITIONAL PLAINTIFF'S COUNSEL]**

| **HYDE & SWIGART** | **ORSHANSKY & YEREMIAN LLP** |
| --- | --- |
| Joshua B. Swigart, Esq. (SBN: 225557) | Anthony J. Orshansky, Esq.  (199364) |
| josh@westcoastlitigation.com | anthony@counselonegroup.com |
| 2221 Camino Del Rio South, Suite 101 | 9301 Wilshire Blvd., Suite 650 |
| San Diego, CA 92108 | Beverly Hills, CA 90210 |
| Telephone: (619) 233-7770 | Telephone: (310) 277-9945 |
| Facsimile: (619) 297-1022 | Facsimile: (424) 277-3727 |